UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SECURITY NATIONAL INSURANCE COMPANY,<br>      Plaintiff,<br>v.<br><br>BRIOHN BUILDING CORPORATION, THE CINCINATTI INSURANCE COMPANY, K. KRANSKI & SONS, INC., and THE TRAVELERS INDEMNITY COMPANY, INC.,<br>      Defendants. | Case No. 12-CV-88-JPS<br><br><br>AMENDED ORDER[1] |

  In this diversity action, Security National Insurance Company ("Security") seeks to recover losses suffered by its insured, Traffic and Parking Control, Inc. ("TAPCO"), as subrogee against the defendants. (Docket #1). The defendants, Briohn Building Corporation ("Briohn") and Cincinatti Insurance Company ("Cincinatti"), have filed a motion for

---

[1] The Court recently entered an order (Docket #48) granting Security National Insurance Company's motion to amend (Docket #41) the Court's previous order and judgment granting summary judgment in full (Docket #37, #38). The Court now enters this amended order, correcting the order lines to reflect that the Court's grant of summary judgment is limited to the motion of the defendants Briohn Building Corporation and Cincinatti Insurance Company. Security's claims against K. Kranski & Sons, Inc., and the Travelers Indemnity Company, Inc., shall remain intact, as those defendants did not file a motion for summary judgment. Additionally, any cross-claims alleged by Kranski and Travelers against Briohn and Cincinatti shall remain intact, as there has not been a summary judgment motion filed on those claims. Finally, for clarity's sake, the Court notes that in this amended order it has also changed the phrasing it initially used to describe the parties to be more specific (e.g., where the Court originally referred generically to "defendants" or "parties," it now inserts more specific language where necessary to clarify *which* defendants or parties it refers to).

summary judgment, which is now fully briefed, thus, this motion is now ripe for decision. (Docket #25, #27, #31, #34).

1. BACKGROUND

As TAPCO alleged in its complaint, TAPCO engaged the services of Briohn to renovate TAPCO's warehouse in Brown Deer, Wisconsin. (DPFF ¶ 2).[2] Briohn then subcontracted the design and construction of the warehouse's fire suppression system to K. Kranski & Sons ("Kranski"). (DPFF ¶ 3).

During construction, Briohn and Kranski allegedly used a faulty water pipe without testing it. (DPFF ¶ 5). That pipe burst on August 8, 2010, causing extensive damage to TAPCO's building and its contents, in the amount of $2,133,526.55. (DPFF ¶¶ 6, 8).

As TAPCO's insurer, Security settled with TAPCO for those damages. (DPFF ¶¶ 7, 9). Security then brought this suit against Briohn, Kranski, Cincinnati (Briohn's insurer), and Travelers Indemnity Company ("Travelers"; Kranski's insurer), seeking subrogation of the amounts it paid to TAPCO as a result of Briohn's and Kranski's alleged negligence. (Docket #1).

If the foregoing were the totality of the facts, this would be a straightforward matter with only negligence and damages at issue—but such is not the case.

Rather, what is truly at issue in this summary judgment motion is the meaning of a clause found in the contract between TAPCO and Briohn. That

---

[2]The Court will use the abbreviation "PPFF" to designate Plaintiff's Proposed Findings of Fact, and "DPFF" to designate Defendant's Proposed Findings of Fact.

contract allocates responsibility for obtaining insurance between TAPCO and Briohn. (DPFF ¶ 17). For instance, the contract requires Briohn to obtain workers' compensation insurance, commercial general liability insurance, and other forms of insurance inapplicable to the case at hand (Contract § 12.1). TAPCO, on the other hand, is required by the contract to obtain builders risk insurance that would cover 100% of the insurable value of the "Work" to be performed. (Contract § 12.2).

Additionally—in the clause germane to this dispute—the parties waived their rights to subrogation, though the parties disagree over the extent of that waiver. (Contract § 12.2.1). The relevant provision provides, in relevant part:

> Notwithstanding any other provisions contained in this Contract, the Owner and Contractor each waives all rights against each other and any of their agents and/or employees, each of the other, from damages caused by fire or other perils *to the extent covered by property insurance obtained pursuant to this Contract or other property insurance applicable to the Work,* except such rights as they have to proceeds of such insurance held by the owner as fiduciary.

(Contract § 12.2.1)(emphasis added). In the same provision, the contract requires that any insurance policies issued provide waivers of subrogation. (Contract § 12.2.1).

2. DISCUSSION

From the above-quoted language, Security and movants Briohn and Cincinatti extrapolate two different readings of the contract. The defendants, Briohn and Cincinatti, argue that the subrogation waiver applies to the entire project, and that the contract therefore bars Security's subrogation claims in

their entirety. (Defs.' Br. in Supp. Mot. 7–9). Security, on the other hand, argues that the contract's terms limit the waiver only to work performed on the building under the contract; under Security's theory, non-work property (such as the contents of TAPCO's building, losses from interruption of work, and portions of the building not affected by the contract) should not be subject to that waiver, and therefore subrogation would be available to Security on such property. (Pl.'s Resp. 2).

The outcome of the summary judgment motion of Briohn and Cincinatti rests on the Court's interpretation of that single phrase. If the Court determines that the waiver covers the entirety of TAPCO's property, then it must grant the motion of Briohn and Cincinatti. Conversely, if the Court determines that the waiver should apply only to work covered by the contract between TAPCO and Briohn, then the Court must deny the defendants' motion, and a trial may be appropriate to determine issues relating to the scope of that contract, Briohn and Kranski's negligence, and damages.

2.1     Summary Judgment Standard

Summary judgment is appropriate when the movant can make two separate showings: first, that there are no genuine issues of material fact; and, second, that based upon those facts the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must review all of the evidence in the light most favorable to the non-moving party, and, if it determines that a reasonable jury could return a verdict for the nonmoving party, it must deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Page 4 of 10

Case 2:12-cv-00088-JPS   Filed 11/07/12   Page 4 of 10   Document 51

The first condition for summary judgment is satisfied here, at least insofar as the dispositive term of the contract is concerned. The parties do not dispute the language of the contract. They both agree that the contract contains a waiver of subrogation rights, and they both agree (implicitly, in Security's case) that the case must be dismissed in its entirety if the Court determines that the waiver extends to the entirety of TAPCO's property. (Defs.' Br. in Supp. 4–10, Pl.'s Resp. 3–11). Those are the facts material to the motion for summary judgment of Briohn and Cincinatti.

While there are other facts that remain in dispute (such as the scope of the contract between TAPCO and Briohn, Briohn and Kranski's negligence, and TAPCO's damages), those facts are not material insofar as the motion for summary judgment at hand. However, if the Court finds that the scope of the subrogation waiver is limited to the work performed by Briohn and Kranski—and does not cover TAPCO's non-work property—then those facts become material to the disposition of the case, and the Court must deny summary judgment.

Nonetheless, given the parties' arguments, the Court will treat the material facts regarding the contract between TAPCO and Briohn as not being in dispute for the purpose of deciding the summary judgment motion entered by Briohn and Cincinatti.

Thus, there is only one issue before the Court, and it is dispositive. The Court must determine the appropriate legal interpretation of the subrogation waiver clause in the parties' contract.

2.2    Legal Issue: Scope of Contract's Waiver Clause

As already discussed, the Court must determine the extent to which the following language waives any right to subrogation:

> Notwithstanding any other provisions contained in this Contract, the Owner and Contractor each waives all rights against each other and any of their agents and/or employees, each of the other, from damages caused by fire or other perils *to the extent covered by property insurance obtained pursuant to this Contract or other property insurance applicable to the Work*, except such rights as they have to proceeds of such insurance held by the owner as fiduciary.

Contract § 12.2.1 (emphasis added). More specifically, the Court must decide the scope of the phrase "to the extent covered by property insurance obtained pursuant to this Contract or other property insurance applicable to the Work," since it is that phrase that defines the extent to which the TAPCO waived its subrogation rights.

In reaching a conclusion on that issue, the Court must apply Wisconsin law. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (citing *McGeshik v. Choucair*, 9 F.3d 1229, 1232 (7th Cir. 1993), *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir. 1986)). In applying Wisconsin law, the Court would generally apply the law of the Wisconsin Supreme Court. *Home Valu*, 213 F.3d at 963 (citing *McGeshik*, 9 F.3d at 1232, *Green*, 806 F.2d at 761). If, however, "the Wisconsin Supreme Court has not spoken on the issue," then the Court must treat "decisions by the state's intermediate appellate courts as authoritative 'unless there is a compelling reason to doubt that [those] courts have got the law right.'" *Home Valu*, 213 F.3d at 963 (alterations original) (quoting *Rekhi v. Wildwood Indus.*, 61 F.3d 1313, 1319 (7th Cir. 1995)). Moreover, if the Court is "faced with two opposing and equally plausible interpretations of state law, '[it] generally [should] choose the narrower interpretation which restricts liability, rather than the more expansive

interpretation which creates substantially more liability.'" *Home Valu*, 213 F.3d at 963 (alterations added) (quoting *Birchler v. Gehl Co.*, 88 F. 3d 518, 521 (7th Cir. 1996); also citing *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994)).

Applying Wisconsin law, it is clear that the scope of the waiver extends over the entirety of TAPCO's property, and thus summary judgment is appropriate. To begin, waiver of subrogation clauses are valid and enforceable in Wisconsin. *Jindra v. Diedrich Flooring*, 181 Wis. 2d 579, 596, 511 N.W.2d 855, 859 (1994) ("One may waive subrogation explicitly in writing.").

Furthermore, the Wisconsin Court of Appeals has examined language that is practically the same as the language at issue here and determined that such language waived subrogation over the entirety of the damaged property—it was not limited simply to the work for which the parties had contracted. *Wisconsin State Local Gov't Prop. Ins. Fund v. Thomas A. Mason Co.*, 2008 WI App. 49, ¶¶ 10–13, 308 Wis. 2d 512, 748 N.W.2d 476. In *Thomas A. Mason*, the parties waived all subrogation rights "to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work." *Id.*, at ¶ 4. That language is nearly identical to the language at issue here, and the *Thomas A. Mason* court determined that such language should be deemed to be a waiver of subrogation to all of the insured's property—and not limited to the work. *Id.*, at ¶ 13. Applying *Thomas A. Mason* to this case, it is clear that the waiver of subrogation clause in the contract at issue should be construed to cover all of TAPCO's property, thus preventing Security from now seeking subrogation.

And *Thomas A. Mason* should certainly apply to this case. The Wisconsin Supreme Court has not issued a decision on this topic and, therefore, the Court should apply decisions of Wisconsin's intermediate appellate courts, such as *Thomas A. Mason*, to the facts of this case. *See Home Valu*, 213 F.3d at 693. There is no "compelling reason to doubt" *Thomas A. Mason*'s legal conclusion and, therefore, the Court should apply those conclusions. *Id.* Furthermore, there is no meaningful distinction between the clause and facts in that case and those that appear in this matter. In *Thomas A. Mason*, both the subrogation waiver and the definition of "the Work" was practically identical to those items in this matter. *Compare Thomas A. Mason*, 2008 WI App. ¶ 4, *with* (Contract § 12.2.1). Furthermore, any emphasis that the *Thomas A. Mason* court placed on the parties' failure to fill out a separate endorsement page (which is not present in this case) is completely inapposite: the court there treated that page as a nullity and determined that it did not modify the insurance contract, which the court had previously determined waived subrogation as to the insured's entire property. *Id.*, at ¶ 13. Thus, the *Thomas A. Mason* court's decision was not swayed by the existence of that endorsement page, and should not affect the Court's analysis here.

Moreover, the Court should apply *Thomas A. Mason* to this case as opposed to the contrary—but extra-territorial—cases cited by Security. (*See* Pl.'s Resp. at 5–7, 9–11). Sitting in diversity, this Court applies Wisconsin law; it has no choice in the matter. *Green*, 806 F.2d at 761. Thus, no matter the wisdom of any of the non-Wisconsin law cited by Security, the Court is bound to apply *Thomas A. Mason*, because that case established a rule of law that is applicable to this matter. *Id.* Furthermore, even if there were some question as to which approach the Court should apply, as discussed above,

the Court should lean towards applying narrower, liability-restrictive rules of law, of which the *Thomas A. Mason* rule is one, limiting the ability of parties to subrogate. *See Home Valu*, 213 F.3d at 963, *Birchler*, 88 F. 3d at 521, *Todd*, 21 F.3d at 1412; *see also Thomas A. Mason*, 2008 WI App. at ¶ 13. It is also a widely-accepted rule of law, which further justifies the Court's decision to follow it. *See, e.g., Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493–94 (citing *Commercial Union Ins. Co. v. Bituminous Cas. Corp.,* 851 F.2d 98, 101 (3rd Cir.1988); *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 104-05 (2nd Cir.1986); *American Ins. Co. v. L.H. Sowles Co.,* 628 F.2d 967, 968-69 (6th Cir.1980); *Richmond Steel, Inc. v. Legal & Gen. Assurance Soc'y, Ltd.,* 821 F.Supp. 793, 799-802 (D.P.R.1993); *Industrial Risk Insurers v. Garlock Equip. Co.,* 576 So.2d 652, 656-57 (Ala.1991); *United States Fidelity & Guar. Co. v. Farrar's Plumbing & Heating Co.,* 158 Ariz. 354, 762 P.2d 641, 642 (Ct.App.1988); \*494 *Housing Inv. Corp. v. Carris,* 389 So.2d 689, 689-90 (Fla.Dist.Ct.App.1980); *E.C. Long, Inc. v. Brennan's of Atlanta, Inc.,* 148 Ga.App. 796, 252 S.E.2d 642, 647 (1979); *South Tippecanoe Sch. Bldg. Corp. v. Shambaugh & Son, Inc.,* 182 Ind.App. 350, 395 N.E.2d 320, 332-33 (1979); *Willis Realty Assocs. v. Cimino Constr. Co.,* 623 A.2d 1287, 1288-89 (Me.1993); *Haemonetics Corp. v. Brophy & Phillips Co.,* 23 Mass.App.Ct. 254, 501 N.E.2d 524, 526 (1986); *Chadwick v. CSI, Ltd.,* 137 N.H. 515, 629 A.2d 820, 826-27 (1993); *Trump-Equitable Fifth Avenue Co. v. H.R.H. Constr. Corp.,* 106 A.D.2d 242, 485 N.Y.S.2d 65, 67-68 (N.Y.App.Div.), *aff'd,* 66 N.Y.2d 779, 497 N.Y.S.2d 369, 488 N.E.2d 115 (1985); *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.,* 119 Wash.2d 334, 831 P.2d 724, 728 (1992)).

As to the plain language of the Contract, the Court agrees with Security that such language is somewhat ambiguous, and does seem to favor

a more-restrictive view of the parties' waiver of subrogation clause. (Pl.'s Resp. 3–5). Nonetheless, regardless of the Court's view of that language, the Court is bound to follow Wisconsin law and, accordingly, must apply *Thomas A. Mason*, which calls for application of the more-expansive reading.

3. CONCLUSION

As such, being required to apply the *Thomas A. Mason* rule of law, the Court is obliged to determine that the waiver of subrogation clause in the contract between TAPCO and Briohn applies broadly to cover the entirety of TAPCO's property. Therefore, it must grant the motion for summary judgment entered by Briohn and Cincinatti. (Docket #25).

Accordingly,

IT IS ORDERED that the motion for summary judgment of the defendants, Briohn Building Corporation and the Cincinatti Insurance Company (Docket #25), be and the same is hereby GRANTED.

Dated at Milwaukee, Wisconsin, this 7th day of November, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge